IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KOREY L. AARSTAD, et al., | CV-17-72-BMM-JTJ |
| Plaintiffs, | |
| vs. | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFFS' MOTION TO REMAND** |
| BNSF RAILWAY COMPANY, a Delaware corporation; JOHN SWING; MARYLAND CASUALTY COMPANY, a Maryland corporation; ROBINSON INSULATION COMPANY, a Montana Corporation for profit; and DOES A-Z, | |
| Defendants. | |

## I.  Synopsis

Plaintiff Korey L. Aarstad, along with 191 other named plaintiffs (collectively "Plaintiffs"), seek an order remanding this case to state court on the basis that the case was improperly removed from Montana state court based on

1

defendant John Swing's ("Mr. Swing") Montana citizenship. Defendants BNSF Railway Company and Mr. Swing (collectively "BNSF") object, stating the case was properly removed as a mass action. The Court finds that the instant action is a "mass action" under 28 U.S.C. § 1332(d)(11)(B)(ii), and therefore the Court has original jurisdiction. However, for the reasons stated below, this action meets the "local controversy exception." 28 U.S.C. § 1332(d)(4)(A). Accordingly, Plaintiffs' Motion to Remand should be granted.

## II.   Jurisdiction

This case was removed from state court to federal court according to the proper procedure. 28 U.S.C. §1446. Personal jurisdiction appears to exist over all the parties, as the allegations pertain to activities in the state of Montana. Fed. R. Civ. P. 4(k)(1)(A); Mont. R. Civ. P. 4(b). Subject matter jurisdiction depends on diversity of the parties, which is the subject of this Order.

## III.   Facts

In 1963, the W.R. Grace & Co. purchased a vermiculite mill in Libby, Montana, from the Zolonite Company, and operated the mill until 1990. (Doc. 8 at 2). Plaintiffs were all workers of W.R. Grace & Co. or Zolonite Company, whether in the mine, mill, processing, independent contractors, loggers, railroad workers, as well as other members of the Libby community. As a result of toxic

asbestos present in the vermiculite ore, thousands of residents of Libby have been diagnosed with mesothelioma, asbestosis, or other asbestos-related diseases over the course of several decades.  (*Id.*)  As a result, there are hundreds of asbestos-related cases adjudicated or pending in Montana state courts.  (Doc. 14 at 5).

Defendant BNSF is a railway company with its incorporated in Delaware, with its headquarters in Texas.  (Doc. 8 at 1).  At all times pertinent to this case, BNSF commenced railway operations in the town of Libby, Montana.  Mr. Swing was a managing agent for BNSF and is a resident of Lincoln County, Montana. (*Id.*)  Mr. Swing worked for BNSF from roughly 1970 to 1984.  (Doc. 14-3 at 2).

As a result of the bankruptcy of W.R. Grace & Co., many Plaintiffs have had their cases stayed pending the bankruptcy process.  Cases against BNSF have been subject to an injunction since 2007.  (Doc. 14 at 5).  Due to the disjunctive nature of underlying claims, as well as the varying exposure events and dates of diagnosis, Plaintiffs' claims would normally be subject to several different statutes of limitations.  However, due to various tolling agreements between the parties and the pending bankruptcy action, the tolling period for Plaintiffs' claims ended in September of 2016.  (*Id.* at 7-8).

## IV.  Status

Plaintiffs commenced this action by filing a Complaint in the Montana

Eighth Judicial District (Cascade County) on September 23, 2016.  (Doc. 8).

Plaintiffs allege that they resided near or remained on Defendant BNSF's property

and were exposed to toxic asbestos due to BNSF's operations.  The Complaint

joined 192 plaintiffs, all alleging varying levels of asbestos-related injuries,

ranging from mild to fatal.[1]  "All Plaintiffs have incurred the damages alleged

herein."  (*Id.* at 16).  BNSF removed the case to United States District Court on

August 16, 2017, pursuant to 28 U.S.C. §§ 1332 and 1441.  (Doc. 1).

On September 12, 2017, Plaintiffs filed a motion to remand with a

supporting brief.  (Docs. 13-14).  BNSF filed a response brief stating its objection

to the motion on October 19, 2017.  (Doc. 41).  On October 25, 2017, Plaintiffs

filed their reply brief.  (Doc. 43).  On November 1, 2017, the Court heard oral

argument on the motion at a hearing, wherein the Court took the matter under

advisement.  (Doc. 51).  The motion is ripe for adjudication.  Local Rule

7.1(d)(1)(D).

## IV.  Standards

A defendant may remove an action from state court to a federal district court

if the federal court would have had original subject matter jurisdiction over the

matter.  28 U.S.C. § 1441.  As a general rule, a federal court has original

---

[1]Parties later stipulated to the dismissal of three of the plaintiffs' claims against BNSF and Mr. Swing.  (Doc. 52).

jurisdiction if the parties are completely diverse and the amount in controversy

exceeds $75,000.  28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68

(1996).  Complete diversity means that no defendant is a citizen of the same state

as any plaintiff.  *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  The party seeking to

remove the action to federal court bears the burden to show that federal jurisdiction

exists and that removal is proper.  *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408

(5th Cir. 1995).

In addition to diversity jurisdiction, a federal court also has original

jurisdiction over certain class actions which have minimum diversity (any member

of a class of plaintiffs is a citizen of a State different from any defendant) and an

amount in controversy exceeding five million dollars, exclusive of costs and

interests.  28 U.S.C. § 1332(d)(2) (also known as "the Class Action Fairness Act"

or "CAFA").  For the purposes of federal subject matter jurisdiction, a class action

also includes a "mass action," which is defined as "any civil action . . . in which

monetary relief claims of 100 or more persons are proposed to be tried jointly on

the ground that the plaintiffs' claims involve a common questions of law or fact[.]"

28 U.S.C. § 1332(d)(11)(B)(i).  According to subsection (d)(11)(A) of the same

statute, "a mass action shall be deemed to be a class action," and is removable

pursuant to subsections (d)(2)-(d)(10).

## VI.   Analysis

As stated above, a "mass action" is a class action which can be removed to federal court if it meets the following elements:

1) Numerosity: The action must involve the monetary claims of 100 plaintiffs or more;

2) Amount in Controversy: $5,000,000 or more in the aggregate (excluding interests and costs);

3) Diversity: Minimal diversity must be met; and

4) Commonality: Plaintiffs' claims involve common questions of law or fact.

(Doc. 41 at 9 (citing *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1202-03 (11th Cir. 2007)).  BNSF argues that all four of these elements exist on the face of the Complaint, and therefore removal is proper.  (Doc. 41 at 8).  As an initial matter, in determining whether this case is a mass action for purposes of removal, Plaintiffs do not contest that the alleged damages in the case exceeds the amount in controversy requirement.  (*See* Doc. 7-3 at 2-3).  Moreover, there is no dispute that at least minimum diversity exists between one plaintiff and one defendant.

Plaintiffs argue that their Complaint was a "place-marker filing," which was filed solely to preserve the statute of limitations and not to assert a joint claim in a mass action, and therefore does not involve the monetary claims of 100 or more claimants.  (Doc. 13 at 2).  Additionally, Plaintiffs argue that there is no common

question of law or fact between their claims against Defendants.  (Doc. 14 at 13).

Alternatively, they argue the Court should decline jurisdiction because the case

uniquely affects a particular locality in Northwestern Montana, and is therefore

falls under the "local controversy exception" under 28 U.S.C. § 1332(d)(4), or that

the case meets the "local single event exception" to the definition of a "mass

action" in 28 U.S.C. § 1332(d)(11)(B)(ii).  (Doc. 13 at 2).

### A.      Mass action

The first line of inquiry is for the Court to determine whether removal was

proper, *i.e.* whether this action is a mass action under 28 U.S.C. § 1332(d)(2).

Plaintiffs claim that the sole purpose of filing a single complaint with 190-

odd named plaintiffs was as a place-marker to meet the statute of limitations

deadline, and not to try the combined claims of 100 or more plaintiffs in a mass

action.  As stated above, the claims in this case have a long and tortured procedural

history, with claims in varying levels of ripeness depending on the onset of each

claimant's symptoms.  In Montana, claims of asbestosis begin to toll for statute of

limitations purposes upon the diagnosis of the disease.  (Doc. 14 at 6).

> Because the tolling agreements had either expired (e.g. in the case of BNSF)
> or not successfully been negotiated (e.g. in the case of Maryland Casualty),
> and because the period of tolling arising from injunctions of the W.R. Grace
> Bankruptcy Court was approaching exhaustion, in September of 2016[,]
> counsel for plaintiffs found out that a number of claimants . . . needed to
> preserve their claims by the filing of their cases against BNSF within the

statute of limitations period.

(*Id.* at 8).  Plaintiffs cite to the original Complaint in which they stated: "This Complaint is filed to protect the statute of limitations."  (Doc. 8 at ¶10).

BNSF argues that nothing in Plaintiffs' pleadings pre-removal indicated their intent to try the claims separately.  (Doc. 41 at 5).  BNSF points out that Plaintiffs filed one Complaint which asserted the same allegations of fact, paid one filing fee, and requested "a trial by jury" in the singular.  (*Id.*)  Moreover, BSNF argues that all four elements of a mass action are met based on the four corners of the Complaint.  (*Id.* at 10).  BNSF argues that there are more than 100 plaintiffs listed in this action, and states that the Plaintiffs do not contend that the amount in controversy is over five million dollars in the aggregate and that there is at least minimal diversity.  (*Id.*)  Additionally, BNSF argues that "Plaintiffs do not appear to dispute . . . that their claims involve common questions of law or fact, but instead argue that the answers to those questions may differ."  (*Id.*)  Therefore, BNSF argues that this is a mass action on its face and that removal is therefore proper.

Plaintiffs are the "masters of their complaints," and can structure their actions and pleadings as in a manner so as to avoid federal jurisdiction.  *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218, 1223 (9th Cir. 2014).  Counsel

for Plaintiffs have stated that it was not their intent to have a joint trial, asserting that the cases of some are "more ripe" than others.  (*See* Doc. 14 at 14).  However, a court must look to the four corners of the Complaint in determining a motion for remand.  *Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011).  Based on the allegations set forth in Plaintiffs' Complaint, the Court finds that this is a mass action.  It is undisputed that this action sets out the monetary claims of 100 or more plaintiffs and that the amount in controversy is greater than five million dollars exclusive of costs and interest.  Additionally, because "well over 90 percent of the plaintiffs in this action are citizens of the state of Montana" (Doc. 14-1 at ¶2), and because BNSF is incorporated in the state of Delaware and is therefore a citizen of Delaware (Doc. 8 at ¶2), the Court finds that there is minimal diversity.

The Court also finds that Plaintiffs' claims all involve common questions of law or fact.  The Ninth Circuit has held that "[w]hat matters to class certification . . . [is] the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  As Plaintiffs note in their brief, "it is not sufficient, to broadly articulate a common issue; rather, the issue must be capable of <u>joint resolution</u>."

9

(Doc. 14 at 15) (emphasis in original).  Plaintiffs argue that there is no commonality in law or fact because there are varying exposure dates and "disparate time frames of knowledge and wrongdoing."  (*Id*. at 15).  However, in the Complaint, every single Plaintiff alleges a negligence claim and a strict liability claim against BNSF, which shows a common question of law.  (Doc. 8 at ¶¶66-79).  Moreover, the Court finds that the varying dates of exposure all fall under a common question of fact in that Plaintiffs' Complaint alleges "[a]t all times, BNSF knew or should have known" of the dangers of asbestos.  (*Id.* at ¶71).  The Court finds that the common answer to the question of whether BNSF was negligent would produce a common answer to "drive the resolution of the litigation."  Therefore, all of the elements of a mass tort exist on the face of the Complaint.

"Where a single complaint joins more than 100 separate claims involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial."  *Ramirez v. Vintage Pharmaceuticals*, 852 F.3d 324, 329-30 (3d Cir. 2017).  Therefore, to defeat this presumption, Plaintiffs must assert some language in the Complaint sufficient to signify an intent to try the cases separately.  Plaintiffs argue that they "unequivocally filed this action *expressly* for the purpose of protecting the statute of limitations[.]" (Doc. 14 at 12) (emphasis in original).  However, merely stating that the Complaint "is filed to

protect statutes of limitations" does not expressly show an intent to avoid a joint trial.  As the masters of their Complaint, Plaintiffs could have written it to avoid federal jurisdiction in any number of ways.  Because they did not, and because the all of the elements of a mass action appear on the face of the Complaint, the Court finds that this is a mass action under 28 U.S.C. § 1332(d)(11).

Finally, Plaintiffs argue that a joint trial would deny them their right to "full legal redress" under Article II, Section 16 of the Montana Constitution.  (Doc. 14 at 14).  "Whether the unripe cases were forced to be tried jointly with ripe cases, or ripe cases were forced to wait for the latter cases before their claim could be jointly tried, either procedure would breach this substantive constitutional guarantee for injuries in Montana."  (*Id.*)  However, as stated above, Plaintiffs are the masters of their Complaint and could have structured their Complaint to avoid what they perceive as a premature joint trial.

The Court finds that this action is a mass action under 28 U.S.C. § 1332 (d)(11), and therefore the Court has original jurisdiction and removal is proper.  28 U.S.C. § 1332(d)(2).

## B.    Local controversy exception

There are two potentially relevant exceptions to the mass action rule granting federal jurisdiction.  First, Plaintiffs argue that the Court should decline

jurisdiction over this matter as it falls under 28 U.S.C. § 1332(d)(4)(A), the "local controversy exception." This exception states that if two-thirds of the plaintiffs are citizens of the State in which the action was filed, the district court shall decline jurisdiction if: (1) "at least one defendant . . . from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted" by the plaintiffs is a citizen of the State in which the action was originally filed, and said alleged conduct of that one defendant also occurred in the State, or (2) the "primary defendants" are citizens in the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4). "A plaintiff seeking remand has the burden of showing that the local controversy exception applies." *Coleman*, 631 F.3d at 1013. Moreover, the language of the statute "favors federal jurisdiction over class actions," and the legislative history also "suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" *Evans v. Walter Industries, Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting S.Rep. No. 109-14 at 42).

### 1. Two-thirds requirement

From the outset, Plaintiffs must show that at least two-thirds of the members of the class are citizens of the State in which the action was originally filed, *i.e.*

Montana.  The Complaint does not identify which Plaintiffs are or are not Montana citizens, but instead states that all Plaintiffs "are current or former residents and/or frequent visitors of the Libby, Montana, Lincoln County area."  (Doc. 8 at ¶1).  "It is black letter law that, for purposes of diversity, '[r]esidence and citizenship are not the same thing.'"  *Dulcich, Inc. v. Mayer Brown, LLP*, 954 F.Supp.2d 1129, 1131 n.1 (D. Or. June 28, 2013) (quoting *Seven Resorts, Inc. v. Cantlen*, 57 F.3d 771, 774 (9th Cir. 1995)).  Furthermore, the attached appendix listing the plaintiffs by name and claimed damages does not identify the Plaintiffs by their citizenship. (*See* Doc. 8-1).  Counsel for Plaintiffs subsequently filed an affidavit averring that "well over 90 percent of the plaintiffs are citizens of Montana.  (Doc. 14-1 at 2). On October 19, 2017, Plaintiffs' counsel again filed an affidavit purporting to allege the Plaintiffs' respective citizenship wherein it attached "a list of 146 plaintiffs (including 14 estates) in this action who reside in Montana, and resided in Montana at the time this case was removed to federal court."  (Doc. 43-1 at 2-6).

The Ninth Circuit in *Coleman* held that a court is not limited to the pleadings in making certain factual determinations, such as a party's citizenship.  "[S]ome questions of subject matter jurisdiction are questions of fact, the determination of which may depend on evidence."  *Coleman*, 631 F.3d at 1016; *see Indus.*

*Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990) (looking to extrinsic evidence to determine corporation's citizenship).  "These jurisdictional facts [as opposed to jurisdictional allegations (*see infra*)], which exist independent of the complaint, may require evidentiary clarification if the pleadings themselves are insufficient."  *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111, 1121 (9th Cir. 2015).  Thus, a court may look to extrinsic evidence to determine a party's citizenship.

In his first affidavit, counsel for Plaintiffs stated that "well over 90 percent of the plaintiffs" were "citizens" of Montana (as opposed to all of the other pleadings which allege that they are "residents").  (Doc. 14-1 at ¶2).  While this statement is not technically accurate (only 146 out of 189–or 77 percent–of the plaintiffs are citizens of Montana), it does allege that over two-thirds of the class members are Montana "citizens."  Therefore, the Court finds that Plaintiffs have met their burden to show that at least two-thirds of the members of the class of plaintiffs are citizens of Montana.

### 2.    Local controversy

Having established that at least two-thirds of the members of the class of plaintiffs are Montana citizens, Plaintiffs bear the burden to show that the Complaint meets the elements of the local controversy exception.  *Coleman*, 631

F.3d at 1013.  Thus, Plaintiffs must demonstrate that at least one of the defendants, who is a citizen of Montana, is a defendant: (1)"from whom significant relief is sought," and (2) "whose alleged conduct [in Montana] forms a significant basis for the claims asserted."  28 U.S.C. § 1332(d)(4)(A)(II)(aa)-(bb)  (hereinafter "subsection (aa)" and "subsection (bb), respectively).  Also, the local controversy exception does not apply if another class action has been filed alleging the same or similar factual allegations against any defendant within three years of the filing of this action.  28 U.S.C. § 1332(d)(4)(A)(III).  The Ninth Circuit has emphatically held that the Court "is limited to the complaint in deciding whether [these two] criteria for the local controversy exception are satisfied."  *Coleman*, 631 F.3d at 1012; *see Benko*, 789 F.3d at 1117.

### i.      Citizenship of defendants

The first step the Court must undertake is to determine the citizenship of the defendants.  As stated above, BNSF Railway Company is a citizen of Delaware and Texas.  (Doc. 8 at ¶2).  The Complaint alleges that Defendant Maryland Casualty Company ("Maryland Cas. Co.") is a Maryland corporation with its principal place of business in Maryland.  (*Id.* at ¶4).  As such, Maryland Cas. Co. is a citizen of the state of Maryland.

The Complaint further alleges that Mr. Swing is a "resident" of Lincoln

County, Montana.  (*Id*. at ¶2).  As stated above, merely alleging a party's residence is insufficient for purposes of determining diversity, which hinges on the party's citizenship.  28 U.S.C. § 1332(a)(1).  However, BNSF does not argue that Mr. Swing is not a citizen of Montana, and therefore has effectively conceded the point.  Moreover, given the difference in pleading standards between state and federal courts, it is likely that Plaintiffs would be free to amend their Complaint to sufficiently allege that Mr. Swing is a Montana citizen.  *See Coleman*, 631 F.3d at 1020-21.  Thus, the Court finds that Mr. Swing is a Montana citizen for the purposes of this analysis.

Finally, Plaintiffs allege that Defendant Robinson Insulation Company ("Robinson Insulation") "is or was a Montana business corporation for profit with its principal place of business in Great Falls, Cascade County, Montana[.]" (*Id.* at ¶6).  However, Plaintiffs do not argue that Robinson Insulation is a defendant from whom significant relief is sought or that its alleged conduct formed a significant basis for their claims.  Therefore, Plaintiffs can only assert the local controversy exception as it applies to Mr. Swing.

## ii.     Significant relief sought

Having cleared the two-thirds requirement and having established that Mr. Swing is a Montana citizen, Plaintiffs must show that "significant relief is sought"

from Mr. Swing pursuant to subsection (aa).

As stated above, the Ninth Circuit has held that a court "cannot look beyond the complaint in determining whether the criteria for subsections (aa) and (bb) have been satisfied." *Coleman*, 631 F.3d at 1017.  This Ninth Circuit holding settles a split of authority between other federal courts which have allowed extrinsic evidence in determining this element, specifically refuting *Robinson v. Cheetah Transportation*, 2006 WL 468820 (W.D.La. Feb. 27, 2006).  *Id.* at 1019 ("Some courts have followed *Robinson* and have looked outside the complaint to determine whether the criteria of subsections (aa) and (bb) have been satisfied. . . . [W]e disagree with these decisions").

However, neither the Ninth Circuit nor any court that this Court could find have defined "significant relief."  "There is little case law that defines 'significant relief' or 'significant basis'" under subsections (aa) and (bb).  *Laws v. Priority Tr. Servs. of N.C., L.L.C.*,2008 WL 3539512, at *5 (W.D. N.C. Aug. 11, 2008).  Both the District Court in *Laws* and the Ninth Circuit in *Coleman* cite to the Senate Report for CAFA, which provides an example of a claim which it said does not seek significant relief:

> The example is a class action brought in Florida, on behalf of Floridians against an out-of-state automobile manufacturer and a few in-state dealers, alleging a products liability defect.  The vehicle was sold in all fifty states.  The defendant dealers' conduct does not form a significant basis of the

claims or from whom significant relief is sought, because the retailer is "small change compared to what they are seeking from the manufacturer."

*Laws*, 2008 WL 3539512 at * 5 (citing *Eakins v. Pella Corp.*, 455 F.Supp.2d 450, 452 (E.D. N.C.2006)); *see* S. Rep. No. 109-14 at 29.

BNSF argues that any relief sought from Mr. Swing is "small change" compared to the relief sought from BNSF.  (Doc. 41 at 19-20).  BNSF cites to *Robinson* for the general idea that a court should determine "significant relief" by weighing the defendants' ability to pay the bulk of a damage award.  In analyzing this example, however, the Ninth Circuit in *Coleman* determined that the hypothetical claim does not seek "significant relief" from the dealers not because of its size relative to the manufacturer, but based factors on which would be obvious in the complaint (*e.g.* the smaller dealers do not affect a majority of the class members while the manufacturer is liable to all, and the dealers did not create the manufacturing defect).  *Coleman*, 631 F.3d at 1018.  In doing so, the Ninth Circuit declined to hold that a smaller defendant is necessarily "small change."

In this case, Plaintiffs seek significant relief against Mr. Swing and against BNSF.  Plaintiffs allege in the Complaint that Mr. Swing is both individually liable for his wrongful actions and that BSNF is vicariously liable for his wrongful actions as his employer:  "John Swing was a managing agent for BNSF in Libby, Montana, and is such separately responsible for acts wrongful in this nature.

18

Allegations herein as to BNSF's conduct and knowledge by this reference specifically include defendant John Swing." (Doc. 8 at ¶67). Moreover, the Complaint seeks damages against "the Defendants," which would include Mr. Swing. (*Id.* at ¶164). The Ninth Circuit held in *Coleman* that "seek[ing] damages equally from [the defendants]" is "sufficient" to satisfy subsection (aa). *Coleman*, 631 F.3d at 1020; *see also Lefevre v. Connexions, Inc.*, 2013 WL 6241732, *3 (W.D. Tex. Dec. 3, 2013); *Flores v. Chevron Corp.*, 2011 WL 2160420, *4 (C.D. Cal. May 31, 2011) (plaintiffs satisfied subsection (aa) because they sought damages equally from local and non-local defendants). While BNSF claims it is nonsensical to believe that Mr. Swing is named a defendant for any reason other than to defeat diversity, there is nothing in the Complaint itself which would suggest that Mr. Swing is a nominal defendant.

Additionally, BSNF argues that Plaintiffs are not seeking significant relief from Mr. Swing based on the fact that Plaintiffs' counsel, who has represented other plaintiffs in similar cases against BNSF, has dismissed Mr. Swing without seeking settlement from him, implying that Plaintiffs cannot seek relief from Mr. Swing because they know he personally cannot satisfy a judgment. (Doc. 41 at 17-18). However, the Ninth Circuit has held that such an inquiry into Mr. Swing's financial ability to pay a judgment is inappropriate:

> The statutory language is unambiguous, and a "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained."  There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration[.]

*Coleman*, 631 F.3d at 1015 (citing *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244–45 (10th Cir. 2009)).  As such, the Court is not permitted to assume that Mr. Swing is indigent and cannot satisfy Plaintiff's claim of damages, nor may the Court assume that Plaintiffs will dismiss Mr. Swing in this action as their counsel has done in other actions.

Therefore, based on the allegations in the Complaint, the Court finds that Plaintiffs have met their burden to show that they are seeking significant relief from Mr. Swing.

### iii.    Significant basis for the claims asserted

Plaintiffs must also show that their claims against Mr. Swing "form a significant basis for the claims asserted," pursuant to subsection (bb).  Like subsection (aa), there is little case law defining a"significant basis for the claims asserted."  The Fifth Circuit has held that subsection (bb) hinges on whether the complaint "contain[s] information about the conduct of [the local defendant] relative to the conduct of the other defendants . . . as it relate[s] to the claims of the putative class."  *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358,

20

361 (5th Cir. 2011).  Additionally, the local defendant's alleged conduct must affect "all or a significant portion of the putative class." *Id.* at 362.  This does not mean, however, "that the local defendant's alleged conduct form[s] a basis of each claim asserted; it requires the alleged conduct to form a significant basis of all the claims asserted." *Id.* at 361 (quoting *Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 156 (3d Cir. 2009)).

In *Opelousas*, the Fifth Circuit held that the plaintiffs' claims against the local defendant ("LEMIC") did not form a significant basis for their claims because they were indistinguishable from those of the other defendants ("Zurich"). "The complaint makes no effort to quantify or even estimate the alleged illegal underpayments made by LEMIC versus those made by Zurich. The complaint therefore does not allege facts describing LEMIC's conduct so as to establish that LEMIC's conduct forms a significant basis of the plaintiff's claims." *Id.*

In this case, the Complaint sets forth allegations distinguishing Mr. Swing's individual "wrongful acts" from those of BNSF.  (*See* Doc. 8 at ¶67; *see also* Plaintiff's Second Amended Complaint, Doc. 56-1 at ¶¶33-39).[2]  It is irrelevant

---

[2]     [The Court is] aware of the difficulties that can be created by different pleading requirements in state and federal courts. A plaintiff filing a putative class action in state court need satisfy only the pleading standards of that court. It is therefore possible that if a putative class action is removed from state to federal court under CAFA[,] the complaint, as originally drafted, will not answer the questions that need to be answered before the federal court can determine whether the suit

whether BNSF controlled or exercised authority over Mr. Swing; the Complaint alleges that Mr. Swing personally knew of the danger of asbestos and personally failed to warn Plaintiffs.  Thus, he is personally liable for his alleged actions.  The Ninth Circuit in *Coleman* reasoned much the same:

> With respect to "conduct" under subsection (bb), Estes [West] contends that because Estes Express controls all important actions of Estes West, the conduct of Estes West does not "form a significant basis for the claims" asserted by Coleman. This contention ignores the fact that the conduct of Estes West, even if controlled by Estes Express, nonetheless remains the conduct of Estes West, for which Estes West may be held liable.

*Coleman*, 631 F.3d at 1020.  Importantly, it is Mr. Swing's individual wrongful acts which underlie much of the basis for Plaintiffs' claims against BNSF, and therefore necessarily meet the criterion of subsection (bb).  "[T]he allegations of Swing's wrongdoing are combined with the allegations against BNSF because both had knowledge of the asbestos hazard and failed to take action or give warning. Indeed, most of BNSF's wrongdoing is derived from the knowledge and actions of its manager Swing."  (Doc. 43 at 9).   Accordingly, based on the allegations set forth in the Complaint, the Court finds that Plaintiffs have met their burden to show that their claims against Mr. Swing form a significant basis for the claims

---

comes within the local controversy exception to CAFA jurisdiction. In that circumstance, the district court may, in its discretion, require or permit the plaintiff to file an amended complaint that addresses any relevant CAFA criteria.

*Coleman*, 631 F.3d at 1020-21.

Plaintiffs assert in this action.

### iv.    Other class actions

While Plaintiffs have met the first three elements of the local controversy exception, CAFA requires Plaintiffs clear one final hurdle.  "[D]uring the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons."  28 U.S.C.A. § 1332(d)(4)(A)(III). Subsection (A)(III) is a jurisdictional fact, and the Court may look to extrinsic evidence.  *Coleman*, 631 F.3d at 1016.

The Court has found no evidence that a similar class action has been filed against any of the defendants "asserting the same or similar factual allegations" within three years of the filing of this action.  Thus, the Court finds that Plaintiffs have met there burden as to proving the local controversy exception, 28 U.S.C. § 1332(d)(4), is applicable in this case.  As such, the Court recommends that the action be remanded to state court.

### C.    Local single event exception

Finally, Plaintiffs argue that their claims fall under the local single event exception to the definition of a mass action.  28 U.S.C. §1332(d)(11)(B)(ii)(1). Plaintiffs bear the burden of proving the single event exception applies.

The Ninth Circuit has held that this exception is to be strictly construed, and that the legislative history "ma[de] clear that the exception was intended to apply 'only to a truly local single event with no substantial interstate effects.'" *Nevada v. Bank of America Corp.*, 672 F.3d 661, 672 (9th Cir. 2012) (quoting S. Rep. No. 106-14 at 41 (2005)).  As an example, the Circuit Court has held that an oil refinery accident releasing toxic materials into the air or water would fall under the exception, but "an action against the refinery alleging continuous course of pollution over a number of years would not."  *Allen v. Boeing Co.*, 784 F.3d 625, 632 (9th Cir. 2015).

This action is a clear example of the latter.  Plaintiffs allege that they were "injuriously exposed to asbestos after 1963."  (Doc. 8 at ¶12).  They go on in detail to describe the decades of continuous exposure to asbestos.  (*Id.* at ¶¶14-65).  Moreover, Plaintiffs state in their brief that there are a "variety of bases for claims arising from different dates of exposure[,]" specifically arguing that exposures in the 1950s and exposures in the 1980s may be "based on a different set of underlying facts."  (Doc. 14 at 7).  The facts of this action are clearly akin to a "continuous course of pollution," which the Ninth Circuit has held does not meet the local single event exception under 28 U.S.C. §1332(d)(11)(B)(ii)(1).  The Court finds that the local single event exception does not apply to these facts.

24

# VII.   Conclusion

The Court finds that BNSF properly removed this case to federal court.  The Court has subject matter jurisdiction over this case because it finds that the action is a mass action under 28 U.S.C. § 1332(d)(11).  The Court finds that the local single event exception (28 U.S.C. §1332(d)(11)(B)(ii)(1)) does not apply to the facts of this case.  However, the Court finds that Plaintiffs have met their burden to show that this action meets the local controversy exception under 28 U.S.C. § 1332(d)(4)(A).  Therefore, the Court recommends that Plaintiffs' Motion to Remand (Doc. 13) should be granted.

Based on the foregoing, the Court **FINDS:**

1.    The monetary claims of more than 100 plaintiffs are proposed to be tried jointly and involve a common question of fact or law.  Therefore, it is a mass action under 28 U.S.C. § 1332(d)(11).

2.    The amount in controversy of the mass action exceeds five million dollars, exclusive of costs and interest, and at least one member of the class of plaintiffs is a citizen of a different state than one of the defendants.  Therefore, the Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

3.    Plaintiffs have met their burden to show that Mr. Swing is a Montana citizen, that two-thirds of the members of the putative class are Montana citizens, and that Plaintiffs are seeking significant relief from Mr. Swing, that his conduct in the state of Montana provides a significant basis for relief for Plaintiffs' claims, and that no similar class actions have been filed against any of the defendants within three years of the filing of this action.  Therefore, the local controversy exception under 28 U.S.C. § 1332(d)(4)(A) applies in this

25

case.

4.   Plaintiffs have failed in their burden to show that this mass action meets the local single event exception under 28 U.S.C. §1332(d)(11)(B)(ii)(1).

The Court **RECOMMENDS:**

The District Court should grant Plaintiffs' Motion to Remand (Doc. 13).

Dated the 23rd day of January, 2018.


John Johnston
United States Magistrate Judge

26