IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| KOREY L. AARSTAD, et al., | |
| Plaintiffs, | CV 17-72-GF-BMM-JTJ |
| vs. | |
| BNSF RAILWAY COMPANY, a Delaware corporation; JOHN SWING; MARYLAND CASUALTY COMPANY, a Maryland corporation; ROBINSON INSULATION COMPANY, a Montana corporation for profit; and DOES A-Z, | **FINDINGS AND RECOMMENDATIONS** |
| Defendants. | |

## BACKGROUND

Plaintiff Korey Aarstad and 191 other named Plaintiffs brought this action in Montana Eighth Judicial District Court, Cascade County on September 23, 2016, seeking to recover damages for injuries they allegedly suffered as a result of their exposure to asbestos in or near Libby, Montana. (Doc. 8). The named Defendants included BNSF Railway Company (BNSF), John Swing, Maryland Casualty Company, and Robinson Insulation Company. Plaintiffs allege that Defendants' conduct contributed to the extraordinary and unique asbestos contamination that occurred in and near Libby.

BNSF removed the case here. (Doc. 1). BNSF argued that removal was proper under the "mass action" provision of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d)(11)(B).

Plaintiffs moved to remand the case to state court. (Doc. 13). Plaintiffs argued that remand was appropriate under the "local controversy exception" to CAFA. 28 U.S.C. § 1332(d)(4)(A)(i).

This Court entered its Findings and Recommendations on the motion to remand on January 23, 2018. (Doc. 60). The Court recommended that this case be remanded to state court. *Id.* The District Court adopted this Court's Findings and Recommendations in full and remanded this case to state court on October 15, 2018. (Doc. 64). BNSF appealed.

The Ninth Circuit Court of Appeals vacated the District Court's order and remanded this case for further proceedings. (Docs. 80, 81). The Ninth Circuit stated that remand was required because it was unclear from the record whether this case satisfied the third element of the local controversy exception. The Ninth Circuit stated that the District Court must determine, in the first instance, whether the principal injuries resulting from the alleged misconduct of each Defendant were incurred in Montana. (Doc. 80 at 1).

The matter has been referred to this Court for findings and recommendations. The Court has given the parties an opportunity to fully develop the record on the issue before the Court. Plaintiffs and BNSF have filed supplemental briefs. (Docs. 94, 95). Plaintiffs have filed a Third Amended Complaint for the purpose of clarifying their claims. (Doc. 108). The parties have presented oral argument. (Doc. 111). The Court is prepared to enter its Findings and Recommendations.

## DISCUSSION

CAFA provides that a defendant may remove an action originally filed in state court if the action qualifies as a "mass action" under CAFA. 28 U.S.C. § 1332(d)(11). CAFA requires, however, that a district court must remand a mass action to state court if the action satisfies the elements of CAFA's local controversy exception. 28 U.S.C. § 1332(d)(4)(A).

CAFA's local controversy exception has four elements. The third element is commonly referred to as the "principal injuries" requirement. See *Beasley v. Lucky Stores, Inc.*, 379 F. Supp. 3d 1039, 1043 (N.D. Cal. 2019). The principal injuries element requires that the:

> "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed."

28 U.S.C. § 1332(d)(4)(A)(i)(III).

The purpose of the principal injuries element is to ensure that the local controversy exception is used only where the impact of the defendants' alleged misconduct is local. See *Talen Montana Retirement Plan v. PPL Corporation*, 2019 WL 4410347 at *7 (D. Mont. Sept. 16, 2019); *Wellons v. PNS Stores, Inc.*, 2019 WL 2099922 at *4 (S.D. Cal. May 14, 2019). The controversy described in the lawsuit must uniquely affect a particular locality to the exclusion of all others. *Id.* When a lawsuit alleges conduct by defendants that could injure numerous identically situated individuals in other states, the lawsuit would not satisfy the principal injuries element because the impact of the defendants' conduct would not be unique to the State where the lawsuit was brought. See *Marino v. Countrywide Financial Corp.*, 26 F. Supp. 3d 949, 954-955 (C.D. Cal. 2014); *Waller v. Hewlett-Packard Company*, 2011 WL 8601207 at *4 (S.D. Cal. May 10, 2011); *Kearns v. Ford Motor Company*, 2005 WL 3967998 at *12 (C.D. Cal. Nov. 21, 2005).

The parties disagree as to whether this case satisfies the principal injuries element. Plaintiffs argue that this case satisfies the principal injuries element because the alleged conduct of each Defendant occurred in Montana, all of the injuries that resulted from the Defendants' alleged conduct were incurred in Montana, and no evidence has been presented that the Defendants' conduct in

Montana could have injured persons in other states. BNSF argues that this case fails to satisfy the principal injuries element because Plaintiffs have alleged that BNSF engaged in conduct that could result in injuries to persons residing outside the State of Montana.

To determine whether this case satisfies the principal injuries element the Court must undertake a two-pronged inquiry. The Court must first review the pleadings to identify the conduct that Plaintiffs allege each Defendant engaged in. *Talen Montana Retirement Plan*, 2019 WL 4410347 at *6. The Court must then determine the location of the principal injuries that resulted from each Defendant's alleged conduct. The principal injuries element is satisfied only if "all or almost all of the [injuries] caused by the Defendants' conduct" occurred in Montana. *Id.* at *7.

### A. Alleged Conduct of the Defendants

#### 1. The Alleged Conduct of BNSF

The claims in this case arise from asbestos contamination that occurred in and near the town of Libby, Montana. (Doc. 82-1 at 4). W.R. Grace excavated millions of tons of vermiculite from its mine located a few miles from Libby from 1923 through 1990. (Doc. 82-1 at 3). The vermiculite deposit was contaminated with a high concentration of amphibole asbestos. (Doc. 82-1 at 5, Doc. 94 at 3).

Crushed vermiculite ore was loaded into open rail cars at BNSF's loading facility located near the mine. (Doc. 82-1 at 6). The ore was then transported by BNSF approximately 4.5 miles, by rail, along BNSF's "Libby Logger" rail line to BNSF's railyard in downtown Libby where BNSF conducted various industrial activities. (Doc. 82-1 at 6).

Plaintiffs are persons who are current or former residents or frequent visitors of Libby. (Doc. 82-1 at 1). Plaintiffs allege that BNSF is liable because BNSF caused them to be exposed to extraordinary high levels of asbestos in or near Libby. Plaintiffs allege that their exposure was caused, in significant part, by BNSF's negligent operation of its Libby loading facility, BNSF's negligent operation of its Libby railyard, and BNSF's negligent transportation of asbestos contaminated vermiculite between its loading facility and railyard. (Doc. 82-1 at 5-12, 15-19).

Plaintiffs allege that asbestos contaminated vermiculite was spilled at BNSF's loading facility. Plaintiffs allege that BNSF's loading facility was extremely dusty. (Doc. 82-1 at 6). Plaintiffs allege that the loading facility and the loaded rail cars were regularly coated in a layer of asbestos contaminated vermiculite dust. *Id.* Plaintiffs allege that clouds of contaminated vermiculite dust were released from BNSF's train cars as they traveled from BNSF's loading

facility to BNSF's railyard in Libby. *Id.* Plaintiffs allege that asbestos contaminated vermiculite was dumped and spilled at BNSF's railyard. (Doc. 82-1 at 6-8). Plaintiffs allege that clouds of asbestos containing dust were produced at BNSF's railyard from BNSF's industrial activities there. (Doc. 82-1 at 8). Plaintiffs allege that the dust clouds produced at the railyard remained suspended for many hours each day and drifted throughout Libby. *Id.*

### 2. The Alleged Conduct of John Swing

John Swing (Swing) worked for BNSF in Libby from 1970 until 1984. (Doc. 82-1 at 12). Swing was BNSF's Supervisory Agent in Libby from 1973 to May 1984. *Id.* Swing was in charge of BNSF's Libby facilities. (Doc. 82-1 at 13). Swing supervised BNSF's employees in Libby, including the train crews and clerks. *Id.* The BNSF train crews operated the local Libby Logger switching train that transported the asbestos contaminated vermiculite from BNSF's loading facility to BNSF's railyard. *Id.* Plaintiffs allege that Swing was in charge of controlling the enormous amount of dust pollution caused by BNSF's transport of asbestos contaminated vermiculite in and near Libby. (Doc. 82-1 at 14). Plaintiffs allege that Swing was negligent in failing to prevent the toxic dust from escaping from BNSF's loading facility, railyard, and Libby Logger switching train, and was

negligent in failing to warn Plaintiffs of the hazardous effects of the vermiculite dust. (Doc. 82-1 at 18-19).

### 3. The Alleged Conduct of Maryland Casualty Company

Maryland Casualty Company (Maryland Casualty) provided professional industrial hygiene services for mine and mill workers at W.R. Grace's facility at Libby. (Doc. 82-1 at 21). Plaintiffs allege that Maryland Casualty was negligent in failing to warn the workers, their families, and the Libby community of the known hazards of asbestos exposure. (Doc. 82-1 at 23-27).

### 4. The Alleged conduct of Robinson Insulation Company

Robinson Insulation Company (Robinson Insulation) operated a vermiculite expansion plant in Great Falls, Montana. (Doc. 82-1 at 34). Asbestos contaminated vermiculite was transported by rail from Libby to Great Falls where Robinson Insulation expanded and processed the vermiculite into various insulation products. *Id.* The vermiculite products were then transported from Great Falls back to Libby and sold to J Neils/St. Regis Champion lumbermill in Libby for use and for resale in Libby. *Id.* Plaintiffs allege that they were exposed to Robinson Insulation's vermiculite products when Robinson Insulation placed them in the stream of commerce in Libby for the use and consumption of the general public there. (Doc. 82-1 at 34-35). Plaintiffs allege that Robinson

Insulation is liable because it knew that its vermiculite products presented a health hazard and Robinson Insulation failed to warn Plaintiffs of that hazard. (Doc. 82-1 at 35-36).

With respect to Robinson Insulation's alleged conduct, it is imperative to note that Plaintiffs do not allege that persons residing outside of Montana were injured by a vermiculite product manufactured by Robinson Insulation, and Defendants have produced no evidence that a vermiculite product manufactured by Robinson Insulation has caused injury to a person outside of Montana.

## B.  Location of the Principal Injuries

Having identified the conduct that Plaintiffs allege each Defendant engaged in, the Court must know determine the location of the principal injuries that resulted from each Defendant's alleged conduct. The Court must determine whether "all or almost all of the injuries" caused by the Defendants' conduct were incurred in Montana. *Talen Montana Retirement Plan*, 2019 WL 4410347 at *7.

It is unclear whether the Court's inquiry on this issue is restricted to the injuries alleged in Plaintiffs' pleadings, or if extrinsic evidence may be considered. The Court is unaware of, and neither party cites, a Ninth Circuit case interpreting the principal injuries requirement. Federal district courts in the Ninth Circuit have restricted their inquiry to the conduct alleged in the pleadings. These courts have

considered whether the conduct alleged in the complaint could have plausibly caused injuries to a significant number of people or places nationwide. See *Talen Montana Retirement Plan*, 2019 WL 4410347 at *6; *Marino v. Countrywide Financial Corp.*, 26 F. Supp. 3d 949, 954-955 (C.D. Cal. 2014); *Waller*, 2011 WL 8601207 at *4-5; *Kearns*, 2005 WL 3967998 at *12. The Court adopts the approach taken by these courts.[1]

Here, the harm alleged in the pleadings are personal injuries caused by the Plaintiffs' direct exposure to toxic asbestos dust in or near Libby and Plaintiffs exposure to asbestos laced products sold in Libby. The pleadings do not allege that conduct by any Defendant has caused, or could have caused, injuries to persons outside of Montana. Similarly, no evidence has been presented that

---

[1] The Court's findings and recommendations concerning the principal injuries element would remain the same even if the Court were to consider the extrinsic evidence by presented BNSF. BNSF's extrinsic evidence consists of a single lawsuit filed in Madison County, Illinois entitled *Miller v. BNSF et al.*, No. 16-L-000470. (Doc. 95-1). In *Miller*, the plaintiff alleged that his wife had died from mesothelioma caused by her exposure to asbestos contaminated vermiculite. The plaintiff alleged that his wife had lived in close proximity to W.R. Grace's vermiculite processing plant in Minneapolis, Minnesota. The processing plant was located near BNSF's rail line. (Doc. 95-1 at 12). The plaintiff alleged that his wife's exposure to the vermiculite was caused, in part, by BNSF's negligent transportation of the vermiculite near her home in Minnesota. (Doc. 95-1 at 12-13).

Although this case and the Minnesota case both involve the transportation of vermiculite on a BNSF train, any similarity ends there. The alleged conduct in this case is unique to BNSF's activities in Libby, Montana. This case involves BNSF's alleged mishandling of asbestos contaminated vermiculite at BNSF's Libby loading facility and railyard, and BNSF's alleged negligent transportation of the vermiculite on its Libby Logger rail line between the loading facility and the railyard.

persons residing outside of Montana have incurred injuries from the conduct alleged in the Complaint.

BNSF's argument that this case does not satisfy the principal injuries element is not persuasive. BNSF argues that this case does not satisfy the principal injuries element because Plaintiffs have alleged in paragraphs 18 and 22 of the Third Amended Complaint that BNSF transported vermiculite "across the country," and shipped "80% of the world's vermiculite ore." (Doc. 82-1 at 6-7). BNSF argues that these allegations destroy the local nature of this controversy because the transportation of asbestos contaminated vermiculite throughout the nation could cause harm to the residents of each State in which the vermiculite was transported.

BNSF's argument is not persuasive because none of Plaintiffs' claims against BNSF are premised on BNSF's transportation of vermiculite outside of Montana. Plaintiffs claims against BNSF are limited to BNSF's activities in or near Libby. Plaintiffs allegations of BNSF's nationwide transportation of vermiculite merely emphasize the large quantity of vermiculite that BNSF handled and transported in or near Libby. Plaintiffs do not allege, and Defendants have not otherwise shown, that BNSF's Libby-localized operations were repeated elsewhere. The sheer amount of injuries caused to the hundreds of current and

former residents of Lincoln County, Montana, makes this a controversy that uniquely affects Montana unlike anywhere else. To hold otherwise would cause a distinctly local issue to be transformed into a national issue, which is the opposite of CAFA's intent.

Accordingly, the Court RECOMMENDS that the District Court issue an Order stating that this case satisfies the "principal injuries" element of the local controversy exception.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing. 28 U.S.C. § 636(b)(1). A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 21st day of January, 2020.

John Johnston
United States Magistrate Judge