# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| KOREY L. AARSTAD, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> BNSF RAILWAY COMPANY, et al., <br><br> Defendants. | CV-17-72-GF-BMM-JTJ <br><br><br> ORDER ADOPTING FINDINGS AND RECOMMENDATIONS |

## BACKGROUND

Plaintiff Korey L. Aarstad, along with 191 other named plaintiffs (collectively "Plaintiffs"), sought an order remanding this case to Montana state court on the basis that the case had been improperly removed from Montana state court based on the local controversy exception to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(4)(A). (Doc. 13.) Defendants BNSF Railway Company and John Swing ("Swing") (collectively "BNSF") objected on the grounds that they properly had removed the case as a mass action. United States Magistrate Judge John Johnston entered Findings and Recommendations in this matter on January 23, 2018. (Doc. 60.) The Court adopted the Findings and Recommendations in full on October 15, 2018 (Doc. 64.)

1

The Ninth Circuit vacated the Court's order and remanded for further proceedings due to the Court's failure to address the third element of the local controversy exception of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(11)(B). (Docs. 80 and 81.) Specifically, the Ninth Circuit stated that the Court failed to make any finding whether the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred" in Montana. (Doc. 80 at 1.)

On remand, Magistrate Judge Johnston provided the parties with the opportunity to develop the record on CAFA's local controversy exception. (Doc. 112 at 3.) Magistrate Judge Johnston issued Findings and Recommendations on January 21, 2020, in which he found that "all or almost all of the injuries" allegedly caused by BNSF had occurred in Montana. (*Id.* at 9-10.)

BNSF filed objections to this finding on February 2, 2020. (Doc. 114.) BNSF also renewed its objections that John Swing is a local defendant from whom significant relief is sought by Plaintiffs, and that John Swing is a local defendant whose alleged conduct forms a significant basis for the claims asserted by Plaintiffs. (*Id.* at 24-28.) Plaintiffs responded on February 12, 2020. (Doc. 115.)

The Court reviews *de novo* Findings and Recommendations to which a party timely objects. 28 U.S.C. § 636(b)(1). The Court reviews for clear error portions of Magistrate Judge Johnston's Findings and Recommendations to which no parties

specifically objected. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).

## ANALYSIS

### I. All or Almost All of the Injuries Occurred in Montana

BNSF objects on a number of fronts to Magistrate Judge Johnston's finding that "all or almost all" of the injuries resulting from the alleged conduct occurred in Montana. (*See* Doc. 114.) To start, they object that Magistrate Judge Johnston "improperly focused his analysis on *where Plaintiffs were injured*." (Doc. 14 at 13.) They argue that Magistrate Judge Johnston should have considered whether the conduct in the complaint "could be alleged to have caused other injuries outside Montana." (*Id.* (emphasis removed).) BNSF further objects on the basis that Magistrate Judge Johnston should have considered extrinsic evidence outside the pleadings. (*Id.* at 14.) Third, BNSF claims that extrinsic evidence shows that its alleged conduct has injured non-Montanans. (*Id.* at 18.) Finally, BNSF claims that even the allegations of the complaint standing alone show that the alleged conduct occurred outside Montana. (*Id.* at 22.) The Court agrees, in part, with BNSF's objections, but ultimately adopts Magistrate Judge Johnston's recommendation that "all or almost all" of the injuries resulting from the alleged conduct occurred in Montana.

### a. The Court should consider the principal injuries of all victims regardless of class membership.

The Ninth Circuit has yet to interpret CAFA's principal injuries requirement. This element of CAFA's local controversy exception requires that the "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(III). Putative class actions may allege conduct that injured class members and those who are not in the class. Courts stand divided about whether "principal injuries resulting the alleged conduct" requires a court to look solely at the principal injuries *of the class* resulting from the alleged conduct or at the principal injuries *of all people* resulting from the alleged conduct.

Other federal district courts in the Ninth Circuit seem to follow something closer to the latter approach. Specifically, they consider whether the conduct alleged in the complaint plausibly could have caused harm to people or places nationwide. *See Marino v Countrywide Financial Corp.*, 26 F. Supp. 3d 949, 954-955 (C.D. Cal. 2014); *Waller v. Hewlett-Packard Co.*, No. 11-cv-454, 2011 WL 8601207, at *4-5 (S.D. Cal. May 10, 2011); *Kearns v. Ford Motor Co.*, No. 05-cv-5644, 2005 WL 3967998, at *12 (C.D. Cal. Nov. 21, 2005). The district courts in those cases rejected the notion that the location of the class determined the outcome. Those courts instead focused on whether the alleged harm plausibly could have been national in scope.

For instance, in *Marino*, plaintiffs sought to define the proposed class as composed solely of Californians. The district court determined that the defendants' alleged conduct of having issued illegal loans had not been restricted to California and was therefore national in scope. *Marino*, 26 F. Supp. 3d at 954-955. Plaintiffs had not alleged injuries that occurred outside California, but they had failed to allege that the injuries occurred solely in California. *Id.* at 955. Thus, plaintiffs failed to satisfy the principal injuries element of CAFA's local controversy exception.

The Senate Report on CAFA seems to back this approach. The report instructs that the principal injuries requirement means "that all or almost all of the damage caused by defendants' alleged conduct occurred in the state where the suit was brought . . . [the] provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct—not just where the proposed class members were injured." S. Rep. 109-14 at 38-39. The Senate Report provides the example of an automobile manufacturer that sells a defective vehicle in all fifty states, but plaintiffs bring a class action on behalf of Floridians. *Id.* at 39. The Court agrees with BNSF that it must consider where all, or almost all, of the damage caused by the Defendants' conduct occurred, rather than strictly the location of the proposed class.

### b. BNSF's extrinsic evidence proves irrelevant to the Court's analysis.

BNSF further objects to Magistrate Judge Johnston's findings that he need not consider extrinsic evidence. (*See* Doc. 114 at 14.) BNSF also claims that extrinsic evidence shows that the alleged conduct caused injuries outside Montana. (*See id.* at 18.) BNSF's argument as to the extrinsic evidence boils down as follows: the asbestos shipped from Libby, Montana crossed state lines and injured people in other states. Thus, the "principal injuries resulting from the alleged misconduct" did not occur solely in Montana.

This argument fails because it focuses on "principal injuries" without accounting for the "alleged misconduct." The "alleged conduct" in the complaint encompasses conduct that occurred exclusively, and resulted in asbestos injuries solely, in Montana. As Magistrate Judge Johnston noted in his findings and recommendations, this case "involves BNSF's alleged mishandling of asbestos contaminated vermiculite at BNSF's Libby loading facility and railyard, and BNSF's alleged negligent transportation of the vermiculite on its Libby Logger rail line between the loading facility and the railyard." (Doc. 112 at 10 n.1) Thus, BNSF allegedly injured people in Montana through conduct that did not injure those in other states. Whether the asbestos that left Libby, Montana and crossed state lines ultimately harmed people in other states proves largely irrelevant.

The Environmental Protection Agency's ("EPA") actions underscore that BNSF's conduct in Montana uniquely injured Montanans. Libby has been designated "the nation's only CERCLA public health emergency." (Doc. 115 at 15.) The EPA declared a Public Health Emergency for Libby on June 17, 2009, based on its recognition of "the serious impact on public health from the contamination at Libby." (Doc. 108-2.) As the EPA's report discusses, Libby's unique topographical features in the form of the narrow mountain valley in which it sits made it and its residents particularly vulnerable to the combined efforts of W.R. Grace in mining the asbestos-laced vermiculite near Libby, of BNSF in transporting the vermiculite to Libby, and of other actors in processing the vermiculite in Libby. These combined efforts at this unique location contributed to the distribution of the asbestos-laced vermiculite throughout the community in quantities toxic to humans. (*Id.*). Thousands of residents of Libby have been diagnosed with asbestos-related diseases over the course of several decades as a result of these particular circumstances. (*Id.*; Doc. 8 at 2.)

With these considerations in mind, the Court may dispense quickly with BNSF's remaining arguments. BNSF's reliance on district court decisions, (*see* Doc. 114 at 16-19 (citing *Coll. of Dental Surgeons v. Triple S Mgmt., Inc.*, No. 09-cv-1209, 2011 WL 414991, at*4 (D.P.R. Feb. 8, 2011); *Villalpando v. Excel Direct Inc.*, No. 12-4137, 2012 WL 5464620, at *1 (N.D. Cal. Nov. 8, 2012)), fails

because those cases involved nationwide conduct that injured people nationwide. Here, by contrast, we have local conduct that allegedly injured people solely in this locality. BNSF's reliance on an Illinois state court case alleging negligent transportation of asbestos-contaminated vermiculite from Libby, Montana to a processing plant in Minnesota proves irrelevant. (Doc. 114 at 19.) The "alleged conduct" in the Illinois state court case differs from the alleged conduct in this case.

Alternatively, the Court could have relied on the unique extent of injuries to Montanans as other courts have done. For example, in *Talen Montana Retirement Plan v. PPL Corporation*, No. 18-cv-174, 2019 WL 4410347, *6-7 (D. Mont. Sept. 16, 2019), the district court determined that the principal injury component of CAFA's local controversy exception had been satisfied on just such a basis. The district court contrasted the alleged harm to cases like *Marino*, *Waller*, and *Kearns*, where the local controversy exception had not been satisfied. *Id.* at *6. The alleged harm suffered by state residents in those cases "proved more or less equal" to the harm suffered by any other consumer throughout the nation. *Id.* at *7. By contrast, the bulk of the harm suffered in *Talen* occurred to a single class member – the Montana Department of Environmental Quality – related to the cost of the massive clean-up project at coal-fired power plants in Montana. *Id.* The proposed class in *Talen* also contained a significant number of active employees and retirees who

live or work in Rosebud County, Montana, the location of the coal-fired power plants, far more than any other county in Montana or the nation. *Id.*

The district court in *Talen* noted that "some other states each have a smattering of Talen Montana creditors, the sheer amount of damage caused to Montana citizens, particularly the hundreds of employees and retirees residing in Rosebud County, and to the Montana Department of Environmental Quality" rendered the controversy one that "uniquely affects" Montana. *Id.* The district court declined to retain jurisdiction when it "would cause a distinctly local issue to be transformed into a national issue, which is the opposite of CAFA's intent" and remanded the case back to Montana state court. *Id.*; *cf. Wellons v. PNS Stores, Inc.*, No. 18-cv-2913, 2019 WL 2099922 at *4 (S.D. Cal. May 14, 2019) (rejecting California as location of principal injuries due to the "operationally-standardized uniform policies and practices" employed by defendants in California and at their out-of-state locations that allegedly misclassified class members as exempt employees).

Retention of jurisdiction by this Court would transform a distinctly local issue focused on the vermiculite mine and the transportation of the asbestos-laced vermiculite from the mine on the four and one-half mile Libby Logger rail line into a national issue. The nature of the harm alleged here differs distinctly from the harm suffered in *Marino*, *Waller*, *Kearns*, and the example in the Senate Report.

9

The harms in those case stemmed from the selling of defective or falsely advertised products on a nationwide basis: loans in *Marino*, hard drives in *Waller*, and vehicles in *Kearns* and in the Senate Report.

The harm here derives from BNSF's alleged negligent transportation of asbestos-laced vermiculite from a mine near Libby to the loading facility four and one-half miles away in Libby. (Doc. 82-1 at 6.) Plaintiffs allege to have suffered injuries from this conduct along the Libby Logger rail line between the mine and the loading facility and at the railyard and from asbestos laced products sold in Libby. (*Id.*) The fact that asbestos shipped from Libby may have injured people outside Montana proves irrelevant as long as the alleged conduct in the complaint resulted in asbestos injuries that injured solely Montanans.

    c.    **The Complaint does not allege that the conduct causing injury to the class could have injured those outside Montana.**

BNSF's last objection to Magistrate Judge Johnston's finding that "all or almost all" injuries occurred in Montana fails for the same reason that BNSF's previous objection fails—it misconstrues the "alleged conduct." BNSF's objection comes in two parts. First, according to BNSF, the Complaint states that Libby vermiculite was "inextricably" contaminated with asbestos, that asbestos injured Montanans, and that asbestos was then shipped across state lines. BNSF argues that the Complaint demonstrates that BNSF's alleged conduct injured people outside Montana unless Plaintiffs show that the asbestos stopped being hazardous

when it crossed state lines. (Doc. 114 at 22-23.) Second, BNSF claims that Magistrate Judge Johnston's analysis "improperly impose[d] the burden of" proof on BNSF, when it should be on Plaintiffs. (*Id.* at 23-24.)

Both objections fail. The first objection fails because it assumes that the shipping of asbestos constituted the "alleged conduct." As covered above, shipping asbestos does not constitute the "alleged conduct" in the Complaint. The second objection fails because it mischaracterizes Magistrate Judge Johnston's analysis. His analysis on its own shows how Plaintiffs have satisfied their burden. The statement that BNSF cites from Doc. 112 at 11 merely shows that in addition to Plaintiffs satisfying their burden, BNSF had done nothing to give Magistrate Judge Johnston pause to rule in favor of Plaintiffs.

## II. John Swing is a local defendant from whom Plaintiffs seek significant relief and whose alleged conduct forms a significant basis for the claims asserted by Plaintiffs.

BNSF also renews its objection to Magistrate Judge Johnston's conclusion that John Swing is a local defendant from whom the class members seek significant relief. (Doc. 114 at 24.) They further renew their objection to Magistrate Judge Johnston's conclusion that John Swing is a local defendant whose alleged conduct forms a significant basis for the claims asserted by the plaintiff class. (*Id.* at 26.) The Court previously determined that John Swing is a citizen of Montana from whom Plaintiffs seek "significant relief" and that his

11

conduct formed a "significant basis" for the claims asserted. (Doc. 64 at 8-10.) The Court incorporates its adoption of those same findings and conclusions.

### III. The Court adopts Magistrate Judge Johnston's Findings and Recommendations as to Maryland Casualty's Motions to Dismiss. (Doc. 113).

No party objected to Magistrate Judge Johnston's findings and recommendations that Maryland Casualty's Motions to Dismiss (Docs. 86, 96) were moot in light of Magistrate Judge Johnston's findings and recommendations that this case should be remanded. (*See* Doc. 113) Because no party objected, the Court reviews for clear error. Finding no clear error and having adopted Magistrate Judge Johnston's ultimate recommendation that this case should be remanded, the Court adopts Magistrate Judge Johnston's findings and recommendations in full.

## CONCLUSION

The Court has reviewed *de novo* Magistrate Judge Johnston's Findings and Recommendations regarding the principal injury component of CAFA's local controversy exception (Doc. 112). The Court finds no error in Magistrate Judge Johnston's Findings and Recommendations and adopts them in part. The Court reviewed Magistrate Judge Johnston's Findings and Recommendations regarding Maryland Casualty's Motions to Dismiss for clear error and found none (Doc. 113). The Court adopts Magistrate Judge Johnston's Findings and Recommendations in full.

Accordingly, **IT IS ORDERED** that:

- Magistrate Judge Johnston's Findings and Recommendations (Doc. 112) are **ADOPTED**, **IN PART**, including Magistrate Judge Johnston's recommendation that the principal injuries element has been met;

- Plaintiffs' Motion to Remand (Doc. 13) is **GRANTED** and this case is to be remanded to the Montana 8th Judicial District Court, Cascade County;

- Magistrate Judge Johnston's Findings and Recommendations (Doc. 113) are **ADOPTED**, **IN FULL**;

- Defendant Maryland Casualty's Motions to Dismiss (Docs. 86, 96) are **DENIED,** without prejudice, as moot.

DATED this 6th day of April, 2020.

*[signature: Brian Morris]*

Brian Morris, Chief District Judge
United State District Court